J-A24023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OMAR MILLER | |
| Appellant | No. 3285 EDA 2014 |

Appeal from the Judgment of Sentence of June 23, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0004797-2013

BEFORE: PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 30, 2015**

Omar Miller appeals the June 23, 2014 judgment of sentence. We affirm.

On May 5, 2013, Miller, Andre Collier, Rasheed Teel, and Charles Freeman devised a plan to rob nineteen-year-old Kareem Borowy. Freeman drove the group to Borowy's house in Pottstown, Pennsylvania, and waited in the car while Miller, Teel, and Collier entered the residence. Once inside, Collier, armed with a .45 caliber Glock pistol, demanded that Borowy hand over a large quantity of marijuana and $3,000.00 in cash. Borowy pleaded with the robbers, insisting that there was no money in the home.

---

[*]     Retired Senior Judge assigned to the Superior Court.

Sensing that the trio was growing impatient, Borowy falsely told them that he kept his money in a "stash house" at a different location. The men then took Borowy outside and forced him into the getaway car. Freeman drove away from the residence, presumably intending to travel to Borowy's contrived stash house. When the vehicle slowed down on a rural roadway in Lower Pottsgrove Township, Borowy managed to escape from the vehicle. Collier chased after Borowy and shot him twice. When he returned to the vehicle, Collier told the others that he saw Borowy fall to the ground, and instructed Freeman to drive away.

Although severely injured, Borowy managed to crawl on his hands and knees to the main roadway. A passing motorist spotted Borowy laying beside the road a short time later and called 911. When the police arrived, Borowy was unresponsive. He was pronounced dead at the scene.

Four weeks later, on June 3, 2013, a team of federal, state, and local law enforcement officers arrested Miller on the sidewalk outside of his uncle's home in Philadelphia, Pennsylvania. The officers took Miller to the homicide unit of the Montgomery County Detectives' Bureau. Detective Todd Richard brought Miller into a conference room and informed him of his right to remain silent and his right to counsel. On July 4, 2013, at 12:49 a.m., Miller signed a written waiver of those rights.

Over the course of the next eleven hours, Miller made four separate on-the-record statements. Each time, Detective Richard transcribed both his

questions and Miller's answers. Miller then reviewed Detective Richard's transcriptions, agreed that they were accurate, and signed them.

In Miller's first statement, which began at 1:01 a.m., he stated that he could not recall whether he was in Pottstown on the day that Borowy was killed. Miller categorically denied participating either in the robbery or in the murder. At 1:47 a.m., Detective Richard gave Miller a break to smoke a cigarette and to use the restroom. At 2:22 a.m., Detective Richard resumed his questioning. At that time, Miller gave a second statement to Detective Richard, which concluded at 2:48 a.m.

Miller gave a third statement to Detective Richard, which began at 6:35 a.m. Miller admitted that he "didn't tell [the detectives] everything" in his earlier statements. Notes of Testimony ("N.T."), 1/10/2014, exh. MS-2 at 8. Miller went on to confess that, on the afternoon of Borowy's murder, he overheard Collier, Freeman, and Teel planning a robbery. He also stated that Collier was carrying a weapon, which Miller described as "a big ass black, semi-automatic with a clip sticking out." *Id.* at 9. Still, Miller denied that he had participated in either the planning or the execution of the robbery.

After giving his third statement, Miller asked for something to eat. The detectives gave Miller a breakfast sandwich and apple juice. Miller then asked to speak with Detective Richard's "boss." N.T., 1/7/2014, at 139. Detective Richard left Miller in the conference room to finish his breakfast,

and told his supervisor, Lieutenant James McGowan, that Miller wanted to speak with him.

When Lieutenant McGowan entered the conference room, he found Miller with his head down on the table. Lieutenant McGowan asked Miller what he wanted to discuss, and Miller began crying. Miller told Lieutenant McGowan that he was at the scene of the murder and that he saw Collier shoot Borowy. Miller then stated that he wanted to continue talking to Detective Richard.

Detective Richard reentered the conference room and took another statement from Miller. In Miller's fourth statement, which began at 11:08 a.m., Miller confessed that he was present during the robbery and the murder. He told Detective Richard that "[Collier] killed that boy and I told him not to." N.T., 1/10/2014, exh. MS-2 at 12. Miller was charged with homicide, kidnapping, robbery, persons not to possess a firearm, receiving stolen property, and false imprisonment.[1] The Commonwealth also charged Miller with conspiracy to commit each of those offenses.[2]

On December 31, 2013, Miller filed a motion to suppress the inculpatory statements that he made to detectives on June 4, 2013. In his

---

[1] 18 Pa.C.S. §§ 2502, 2901(a)(3), 3701(a)(1)(i), 6105, 3925, and 2903, respectively.

[2] 18 Pa.C.S. § 903(b).

motion, Miller asserted two bases for suppression of his statement.[3] First, Miller argued that, "[u]nder the totality of the circumstances, [Miller's] inculpatory statements were not made voluntarily." **See** Miller's Motion to Suppress, 12/31/2013, at 2 (unnumbered). Second, Miller asserted that, "[d]uring the course of questioning, Miller made a request for counsel, even naming such counsel, but detectives did not then terminate the interrogation." **Id.**

The trial court held a three-day hearing on Miller's motion to suppress, which commenced on January 7, 2014. At the beginning of that hearing, the trial court asked Miller's attorney to state on the record the basis for his suppression motion. He responded as follows:

> [W]e have an issue about my client's statement. My client was arrested at about midnight, say 12:01 a.m., on June 4th. The inculpatory statement came on the fourth or fifth attempt of the officers to question him, and it was ultimately given at 11:30, almost—in the morning—12 hours later.
>
> My primary issue is the right to counsel, as opposed to the totality of the circumstances, although I will touch upon them. But my primary issue is the violation of his right to counsel during that process.

N.T., 1/7/2014, at 20-21.

The Commonwealth presented testimony from Detective Richard and Lieutenant McGowan at the hearing. That testimony directly addressed the

---

[3] In his motion, Miller also asked the trial court to suppress a photo array that the police presented to an eyewitness. That aspect of Miller's suppression motion is not at issue in this appeal.

issues that Miller set forth in his suppression motion and reiterated on the record at the beginning of the hearing, namely, (1) whether the totality of the circumstances demonstrated that Miller's statement was involuntary, and (2) whether the detectives continued to question Miller after he had invoked his right to counsel. On April 10, 2014, the trial court denied Miller's suppression motion.

The Commonwealth joined the cases against Miller, Collier, and Freeman for trial.[4] **See** Pa.R.Crim.P. 582 ("Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."). On April 21, 2014, following a five-day jury trial, Miller was convicted of second-degree murder, robbery, kidnapping, conspiracy to commit kidnapping, and conspiracy to commit robbery. On June 23, 2014, the trial court sentenced Miller to life imprisonment. On July 28, 2014, Miller filed a post-sentence motion, wherein he once again argued that "there was not a valid waiver of his **Miranda**[5] rights." Miller's Post-sentence Motion, 7/28/2014, at 2 (unnumbered). Following a hearing, the trial court denied Miller's post-sentence motion on October 30, 2014.

---

4    Teel pleaded guilty to third-degree murder, and agreed to testify for the Commonwealth at his co-conspirators' trial.

5    **See Miranda v. Arizona**, 384 U.S. 436 (1966).

On November 28, 2014, Miller timely filed a notice of appeal. On December 2, 2014, the trial court ordered Miller to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Miller timely complied. On January 20, 2015, the trial court filed a Pa.R.A.P. 1925(a) opinion.

Miller presents one issue for our consideration: "Did the suppression court err in not suppressing the inculpatory statement of [Miller] taken on June 4, 2013, beginning at 11:08 a.m., because some ten hours had elapsed since he had last been advised of his *Miranda* rights?" Brief for Miller at 1.

> Our standard of review of an order denying a motion to suppress evidence is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Crompton*, 682 A.2d 286 (Pa. 1996); *Commonwealth v. Chambers*, 598 A.2d 539 (Pa. 1991). In making this determination, this [C]ourt may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

*Commonwealth v. Ellis*, 700 A.2d 948, 954 (Pa. Super. 1997) (citations modified).

Miller argues that, although he was given *Miranda* warnings at 12:49 a.m., Detective Richard should have rewarned Miller of his constitutional rights before he made his first incriminating statement at 11:08 a.m. The

- 7 -

Pennsylvania Supreme Court has explained the legal principles attendant to such claims as follows:

> This Court has never created a prophylactic rule that a suspect must be rewarned of his constitutional rights every time a custodial interrogation is renewed. ***Commonwealth v. Bennett***, 282 A.2d 276, 279 (Pa. 1971). Rather, we view the totality of the circumstances in each case to determine whether repeated warnings are necessary where the initial warnings have become stale or remote. ***Id.*** Factors that are relevant to such an inquiry are:
>
>> [T]he length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether the statements obtained are materially different from other statements that may have been made at the time of the warnings.
>
> ***Id.*** These criteria, though not mandatory, guide us in determining whether there has been a "clear continuity of interrogation." ***See Commonwealth v. Hoss***, 283 A.2d 58, 66 (Pa. 1971).

***Commonwealth v. Scott***, 752 A.2d 871, 875 (Pa. 2000).

Nevertheless, before we can address the merits of Miller's claim, we first must determine whether he has preserved it for our review. "[A]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." ***Commonwealth v. Little***, 903 A.2d 1269, 1272-73 (Pa. Super. 2006); ***Commonwealth v. Thur***, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that

claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression.").

> It is well-settled law that motions to suppress evidence are decided prior to the beginning of trial. Moreover, pre-trial rulings on the suppression of evidence are final. In sum, suppression motions must ordinarily be made before the trial to the suppression court, they must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression, and the suppression court's determination is to be final, except in the case of evidence not earlier available.

*Commonwealth v. Metzer*, 634 A.2d 228, 233 (Pa. Super. 1993) (citations omitted).

Although the burden in suppression matters is on the Commonwealth to establish "that the challenged evidence was not obtained in violation of the defendant's rights," Pa.R.Crim.P. 581(D), that burden is triggered only when the defendant "state[s] specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." *Commonwealth v. McDonald*, 881 A.2d 858, 860 (Pa. Super. 2005). Thus, when a defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion. *McDonald*, 881 A.2d at 860; *Commonwealth v. Quaid*, 871 A.2d 246, 249 (Pa. Super. 2005) ("[W]hen a motion to suppress is not specific in asserting the evidence believed to have been unlawfully

obtained and/or the basis for the unlawfulness, the defendant cannot complain if the Commonwealth fails to address the legality of the evidence the defendant wishes to contest.").

As explained *supra*, Miller's motion set forth two grounds for suppression of his inculpatory statement. First, Miller argued that "[u]nder the totality of the circumstances, [his] inculpatory statements were not made voluntarily." **See** Miller's Motion to Suppress, 12/31/2013, at 2 (unnumbered). Second, Miller asserted that, "[d]uring the course of questioning, Miller made a request for counsel, even naming such counsel, but detectives did not then terminate the interrogation." **Id.** Nowhere in his motion to suppress did Miller aver that his confession was obtained in violation of **Miranda** because the initial warnings that Detective Richard read at 12:49 a.m. became stale.[6] Moreover, when the trial court asked Miller to state his basis for requesting suppression on the record at the commencement of the suppression hearing, Miller did not raise such an argument. **See** N.T., 1/7/2014, at 20-21. His failure to advance timely this particular legal theory renders his claim waived.[7]

_____

[6]    In his brief, Miller concedes that his staleness argument is distinct from a challenge to the voluntariness of a particular statement. **See** Brief for Miller at 14 ("If a **Miranda** violation has occurred, suppression of the statement is necessary, regardless of the voluntariness thereof and regardless of the totality of the circumstances test.").

[7]    Even if Miller had preserved his staleness argument, our review of the applicable case law leads us to believe that it likely would fail. The
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/30/2015

---

*(Footnote Continued)*

Pennsylvania Supreme Court has explained that, "where there is a time lapse of several hours, the accused is not moved, and there is a clear continuity of interrogation interrupted only by a lapse of time, there is no need for repeated warnings before the second interrogation." **Commonwealth v. Scott**, 752 A.2d 871, 876 (Pa. 2000) (quoting **Commonwealth v. Hoss**, 283 A.2d 58, 66 (Pa. 1971)); **see also Commonwealth v. Bennett**, 282 A.2d 276, 280 (Pa. 1971) (holding that **Miranda** warnings were not stale when given approximately five hours before interrogation, defendant was moved a distance of a few miles, and the statement was given to an officer other than the warning officer).